UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| VICKIE BOLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 4:05-CV-27-AS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM, ORDER & OPINION**

Plaintiff, Vickie Bolinger, seeks judicial review of the denial of her claim for Social Security Benefits. The Commissioner of Social Security found Ms. Bolinger not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Ms. Bolinger applied for a period of disability and disability insurance benefits (DIB), claiming disability beginning January 2, 2000 (Tr. 1031-33), due to neurological problems, a herniated lumbosacral disc, hepatitis, carpal tunnel syndrome, and depression (Tr. 264). Her applications were denied initially and on reconsideration (Tr. 1041-43).

An ALJ issued a decision on June 1, 2004, finding that Plaintiff retained the capacity to perform a range of light work with a ten-pound limit on lifting and occasional postural limitation that involved only simple, repetitive tasks and superficial contact with

supervisors, co-workers, and the general public (Tr. 15-29).  The ALJ also found that a significant number of jobs in the national economy accommodated Plaintiff's residual functional capacity and vocational profile  (Tr. 27-28).  The Appeals Council denied a request for review of the hearing decision (Tr. 8-14).   Ms. Bolinger timely filed a complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## I. Statement of Facts

Ms. Bolinger was 50 years old on her alleged disability onset date of January 2, 2000.  She has a general education development (GED) high school equivalent diploma and beauty school training (Tr. 116, 217).  She had past relevant work experience as a retail cashier and factory production line worker (Tr. 172).

### A. Medical Evidence

In February 2000, Dr. Jeffrey Crecelius, M.D., indicated that Plaintiff had a history of chronic back and pain in her right leg related to a bulging disc in her lumbar spine (Tr. 388).  He further indicated that Plaintiff demonstrated normal knee reflexes, absent ankle reflexes, normal straight leg raising, and normal strength (Tr. 388).  Plaintiff was able to stand on her heels and toes (Tr. 388).  Ms. Bolinger told Dr. Crecelius that she was limited to lifting 20 pounds at work (Tr. 388, 487-88).

Working as a medical consultant for the agency, Dr. Lucille Bangura, M.D., examined Plaintiff on October 3, 2001.  Dr. Bangura found that Plaintiff had normal examination findings (Tr. 538).  Those findings included normal strength in her arms and legs, normal vision, normal sensory responses, and normal deep tendon reflexes (Tr. 538).

2

Her range of back flexion was found to be 80% (Tr. 538).  Her fine motor movements were normal, and she could handle small objects and button clothing (Tr. 538).  Plaintiff had numerous open areas where she had been scratching her lower legs and upper arms (Tr. 538).

On November 28, 2001, Dr. Aldo A. Buonanno, M.D., examined the Plaintiff.  He indicated that Plaintiff denied any drug or alcohol problems (Tr. 533-35).  Though she had a depressed mood, she was able to dress, groom, and bathe herself (Tr. 534).  Plaintiff's daily activities included preparing meals, housecleaning, laundry, and grocery shopping (Tr. 535).  She read and played Yahtzee (Tr. 535).  Dr. Buonanno diagnosed a depressive disorder and assigned a Global Assessment Functioning ("GAF") score of 48. (Tr. 535).

In March of 2002, Dr. Raymond R. Bucur, Ph.D., a psychologist, examined Plaintiff and evaluated her mental condition (Tr. 756-60).  He performed intelligence testing, which showed that Plaintiff had borderline intellectual functioning based on a full scale intelligence quotient (I.Q.) of 71, verbal I.Q. of 73, and a performance I.Q. of 74 (Tr. 757).  Dr. Bucur indicated that he felt Plaintiff's depression may have lowered her score somewhat (Tr. 759).  He noted that once Plaintiff was stabilized environmentally and emotionally, she would be able to do simple clerical work (Tr. 760).

Also in March of 2002, Dr. Crecelius reported that Plaintiff had a normal gait, normal muscle strength, and an absent ankle reflex (Tr. 777).  Plaintiff had a herniated lumbosacral disc, but surgery was a concern because of her hepatitis C (Tr. 777).

3

Dr. J. Pressner, Ph.D., and Dr. W. Shipley, Ph.D., two state agency psychologists, reviewed Plaintiff's medical records and concluded that Plaintiff's impairments did not meet or equal any of the Listings (Tr. 262, 272, 519, 529). Dr. Pressner indicated that Plaintiff did not have any marked limitations in the "B" Criteria of the Listings (Tr. 272). According to Dr. Pressner, Plaintiff had moderate restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (Tr. 272). Dr. Pressner noted Plaintiff's diagnoses of borderline intellectual functioning and depression (Tr. 263, 265).

Dr. Crecelius reported in August of 2002 that Plaintiff complained of symptoms related to a lumbosacral disc bulge, but that the bulge was small and stable (Tr. 762). Plaintiff had normal strength and symmetric reflexes (Tr. 762). He was not sure if her condition would affect her ability to function and be comfortable (Tr. 762). He thought that Plaintiff would not benefit enough to justify undergoing surgery (Tr. 762). He recommended Plaintiff stop smoking and undergo pain management (Tr. 762).

In 2003, Plaintiff attended Wabash Valley Hospital's Mental Health Center for depression and alcohol abuse (Tr. 783-828, 928-49, 966-1012). In June 2004, Megan Moriarty, Plaintiff's therapist, reported that Plaintiff was depressed and confused, and that Plaintiff had a difficult time managing her life and making appropriate decisions (Tr. 966-70). She noted that Plaintiff was moderately groomed with normal gait and posture, and normal facial expressions (Tr. 970). According to Moriarty, Plaintiff was oriented, had

4

normal motor behavior, was defensive and demanding, and had a depressed, angry and irritable affect (Tr. 970). Plaintiff was found to have normal thought content, but poor judgment and insight (Tr. 970).

     B.     Medical Testimony Evidence

Paul Boyce, M.D., testified as a medical expert at Plaintiff's December 2003 administrative hearing (Tr. 87-94). Dr. Boyce reviewed the evidence and identified the medical records concerning Plaintiff's hepatitis C diagnosis in July 2000, liver biopsy in November 2001, history of carpal tunnel release surgeries in 1995 and 1996, and degenerative lumbar disc disease (Tr. 87-91, 94). Dr. Boyce testified that Plaintiff's impairments did not meet or equal any of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 91). Dr. Boyce testified that medical records showed that Plaintiff was limited to light work which allowed a sit-stand option that did not require more than occasional postural movements, such as stooping and kneeling (Tr. 92).

Dr. Georgiann Pitcher, Ph.D., testified as a psychological medical expert at Plaintiff's February 2004 administrative hearing (Tr. 123-26). Dr. Pitcher reviewed Plaintiff's medical records and testified about her condition (Tr. 123-24, 126). He testified that Plaintiff had a borderline intelligence quotient and reading skills that were higher than her I.Q. would indicate (Tr. 123). Plaintiff had a borderline personality, with characteristics of being self-centered and manipulative, and she was suffering from bereavement, alcohol abuse, major depression, and hepatitis C (Tr. 123). He also testified that Plaintiff did not meet or equal the criteria of any Listings (Tr. 123). According to Dr.

5

Pitcher, Plaintiff had a moderate degree of limitation in her concentration, persistence, and pace, which resulted in a restriction to simple, repetitive tasks (Tr. 123-24). Plaintiff was limited to no more than superficial contacts with other people on the job due to her problems with anger management (Tr. 124).

    C.    Vocational Expert Testimony

A vocational expert, Thomas Roundtree, testified at Plaintiff's administrative hearing (Tr. 132-34). He testified that Plaintiff's past jobs as a retail cashier and production line worker required semi-skilled, light or medium work (Tr. 132-33). The vocational expert considered the job possibilities for an individual with the same vocational profile of age, education, and work experience as Plaintiff, who retained the capacity for a range of light exertion work, that was limited to lifting no more than ten pounds and no more than occasional repetitive tasks and no more than superficial contact with supervisors, co-workers, and the general public (Tr. 133). Roundtree identified approximately 7,000 jobs in the regional Indiana economy, including jobs as a machine operator, assemble, and visual inspector (Tr. 133-34).

## II. Standard of Review

This court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Griffith v. Callahan,* 138 F.3d 1150, 1152 (7th Cir. 1998). Substantial evidence consists of "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971).  In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Griffith* 138 F.3d at 1152;  *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997).  That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffith* 138 F.3d at 1152. The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id*.; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### III. Discussion

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act."  *Estok v. Apfel*, 152 F.3d 636, 638 (7th.Cir.1998). Under section 423(c)(1)(B)(1), it is well established that to receive benefits, a disability must have begun or had its inception during the period of insured status.  *Bastian v. Schweiker*, 712 F.2d 1278, 1280 (8th Cir. 1983);  *Demandre v. Califano*, 591 F.2d 1088,

1090 (5th Cir.), *cert.denied*, 444 U.S. 952 (1979).  The Seventh Circuit has established that a claimant has the burden of establishing that he is disabled within the meaning of the Social Security Act on or before the date his insured status expired.  *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998); *Meredith v. Bowen*, 833 F.2d 659 (7th Cir.1987); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir.1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds,* 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F.Supp. 651, 654 (N.D. Ind.1982).  Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured.  *Jeralds,* 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir.1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled.  As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

8

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford* 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford* 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford* 227 F.3d at 868. The initial burden in steps one through four is on the plaintiff; only at step 5 does the burden shift to the Commissioner. *Id*.

The Plaintiff argues that the ALJ made inappropriate comments at her first hearing and used irrelevant criteria to decide her disability claim. Plaintiff's Opening Brief at 18 - 19. According to the Plaintiff, those comments show bias against the Plaintiff. The statements identified by the Plaintiff occurred in the following colloquies:

> ALJ: You got yourself so that in March you're going to have yourself together. You'll be out of house arrest. You'll get yourself a place. You'll be working with these guys. How about – why don't we continue this case until you see if you can get yourself together, get – you know, you'll have some more alcohol treatment and stuff so you'll have a little bit more under your belt in a couple of months. And then you come back and show me what you're going to do with your life. And show me if you got a job. If you get something reasonable. And you're going to be needing – this will be – we'll schedule it before you get off of house arrest. And if you come back and show me that, I'll give you Disability from the time that you applied until you show me that. It's a closed-end Disability period. You wouldn't get Disability forever, but you'd get enough money to get yourself a place and get your act together and in order and everything.

9

> Plaintiff: I'm just wondering what kind of things that you would want me to do, you know, prior to coming back here.
>
> ALJ. Get a job. . . I'm not going to give you an open-end. I don't feel comfortable giving you an open end. Disability forever. I want you to be working, even if it's part time. And then I'm going to find – that's what I'm saying – I'll find that you're rehabilitated yourself. You got your act together. And you're able to work. Now, you take your time to get a nice bunch of money from back Social Security, and I intend for that to start you off on your way. But this gets your lawyer paid. It gets things going in the right way. I want to do the right thing for you. Do you see?

(Tr. 101 - 103). At the second hearing, the following colloquy occurred:

> ALJ: I know something struck me on this case. You struck me – you must of struck me very well the last time, because I wanted to do – but I can't do what I want to do, which is continue the case forever until you get back to work and then give you some money for your time. I can't do that. I can see it's going to take too long. But I don't want to remove an incentive to you to go back to work and I'd do that if I gave you Disability. Do you see? So that's what I am going to do. I am going to deny the case. I'm sorry. Do you understand where I'm coming from?
>
> Plaintiff: No, I don't understand where you're coming from. I'm sorry.
>
> ALJ: Maybe I don't either. To be honest with you. I'm pretty mixed up lately.

(Tr. 142-43). The ALJ's comments are troubling, not because they demonstrate some sort of judicial bias against the Plaintiff, but because they demonstrate that the ALJ relied on improper legal criteria and applied an erroneous legal standard to decide Plaintiff's claim. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (reviewing court limited to determining whether the decision is supported by substantial evidence

10

and "based on proper legal criteria.") (quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004)); *Clifford*, 227 F.3d at 869 (Commissioner's findings will be reversed if erroneous legal standard applied). Specifically, the ALJ told the Plaintiff during the first hearing: "if you come back and show me that [you got a job], I'll give you Disability from the time that you applied until you show me that" (Tr. 102)   As the Commissioner admits, that this was "an inappropriate basis for awarding benefits." Defendant's Brief in Support of Commissioner's Decision at 15.  Similarly, at the second hearing the ALJ stated that he was denying the Plaintiff's claim because awarding her benefits would "remove an incentive to . . . go back to work" (Tr. 142).[1] Whether an ALJ's decision will provide an incentive or disincentive for a claimant to seek employment is not a proper basis on which to award or deny benefits. Therefore, the ALJ's statements demonstrate that the he relied, at least in part, on improper legal criteria in denying the Plaintiff's claim.

Additionally, the ALJ's comments suggest that even he was not sure why his decision was justified.[2] Thus, he failed to "build an accurate and logical bridge between the evidence and the result." *Shramek*, 226 F.3d at 811.

---

[1]The ALJ stated, "But I don't want to remove an incentive to you to go back to work and I'd do that if I gave you Disability. Do you see? So that's what I am going to do. I am going to deny the case" (Tr. 142).

[2]The ALJ stated, "Do you understand where I'm coming from? . . . Maybe I don't either. To be honest with you. I'm pretty mixed up lately" (Tr. 143).

11

## IV.  Conclusion

As a result of the erroneous legal premise of the administrative decision, the ALJ's decision is **REMANDED** for further proceedings consistent with this opinion. Furthermore, consistent with *Briscoe*, 425 F.3d 345, 357, the Court urges the Commissioner to assign a new ALJ to handle any additional proceedings.  *See also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

**SO ORDERED.**

**Date: September 18, 2006**                              s/Allen Sharp
                                                  **ALLEN SHARP, JUDGE**
                                                  **UNITED STATES DISTRICT COURT**